IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
----------------------------------------------------- X
                                                       :
In re:                                                 :   Chapter 11
                                                       :
SEVENTY SEVEN FINANCE INC., et al.,¹                   :   Case No. 16-11409 (LSS)
                                                       :
                Debtors.                               :   (Jointly Administered)
                                                       :
----------------------------------------------------- X   Re: Docket Nos. 12, 31, 47
```

**INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, AND 507 AND FED. R. BANKR. P. 2002, 4001 AND 9014 (I) AUTHORIZING DEBTORS AND DEBTORS IN POSSESSION TO OBTAIN POSTPETITION FINANCING, (II) AUTHORIZING USE OF CASH COLLATERAL, (III) GRANTING LIENS AND SUPER-PRIORITY CLAIMS, (IV) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED LENDERS, (V) MODIFYING THE AUTOMATIC STAY; (VI) SCHEDULING A FINAL HEARING, AND (VII) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")² of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") pursuant to §§ 105, 361, 362, 363, 364(c)(1), 364(c)(2) and 364(c)(3) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001(c), and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), and Rule 4001-2 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), seeking, among other things:

(1)    authorization for (a) Nomac Drilling, L.L.C., as debtor and debtor-in-possession ("Nomac"), Performance Technologies, L.L.C, as debtor and debtor-in-possession ("PTL"), and

---

¹    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Seventy Seven Energy Inc. (8422); Seventy Seven Finance Inc. (3836); Seventy Seven Operating LLC (8399); Great Plains Oilfield Rental, L.L.C. (4318); Seventy Seven Land Company LLC (4346); Nomac Drilling, L.L.C. (9548); Performance Technologies, L.L.C. (5813); PTL Prop Solutions, L.L.C. (2147); SSE Leasing LLC (5764); Keystone Rock & Excavation, L.L.C. (8771); Western Wisconsin Sand Company, LLC (4510). The Debtors' mailing address is 777 NW 63rd Street, Oklahoma City, Oklahoma 73116.

²    Capitalized terms used but not defined in this Order shall have the same meanings ascribed to such terms in the Senior Secured Debtor-in-Possession Credit Agreement or the Motion, as applicable.

4400612.4

Great Plains Oilfield Rental, L.L.C, as debtor and debtor-in-possession ("GPOR", and together with Nomac and PTL, the "Debtor Borrowers") to obtain, and (b) Seventy Seven Energy Inc., as debtor and debtor-in-possession ("Parent"), Seventy Seven Operating LLC, as debtor and debtor-in-possession ("SSO"), Seventy Seven Land Company LLC, as debtor and debtor-in-possession, ("SSLC"), PTL Prop Solutions, L.L.C., as debtor and debtor-in-possession ("PTL Prop"), and SSE Leasing LLC, as debtor and debtor-in-possession ("SSE" and together with Parent, SSO, SSLC, and PTL Prop, the "Debtor Guarantors"), to guarantee, unconditionally, on a joint and several basis, up to $100 million in post-petition financing in the form of a revolving credit and letter of credit facility in accordance with the terms and conditions set forth in the Senior Secured Debtor-in-Possession Credit Agreement, dated as of June 8, 2016, a copy of which is attached hereto as **Exhibit 1** (as amended, supplemented or otherwise modified from time to time in accordance with the terms and conditions set forth herein, the "DIP Credit Agreement"), by and among the Debtor Borrowers and the Debtor Guarantors (collectively, the "Debtor Loan Parties"), Wells Fargo Bank, N.A., as administrative agent and collateral agent ("DIP Agent"), and the lenders party thereto (the "DIP Lenders") and in accordance with this order ("Interim Order"), secured by perfected senior priority security interests in and liens on the Collateral (as defined below), pursuant to §§ 364(c)(2) and 364(c)(3) of the Bankruptcy Code;

 (2) authorization for the Debtor Loan Parties to execute, deliver and enter into the DIP Credit Agreement, the Debtor-in-Possession Guaranty and Security Agreement, dated as of June 8, 2016, a copy of which is attached as **Exhibit 2** (as amended, supplemented or otherwise modified from time to time in accordance with the terms and conditions set forth herein) (the "DIP Guaranty and Security Agreement"), and the other Loan Documents (as defined in the DIP

Credit Agreement, all as amended, supplemented or otherwise modified from time to time in accordance with the terms and conditions set forth herein the "DIP Loan Documents");

(3)     authorization for Debtor Loan Parties to (i) pay and satisfy in full all Pre-Petition Revolving Loan Obligations (as hereinafter defined) due and owing under the Pre-Petition Revolving Credit Agreement (as hereinafter defined) and to authorize Debtor Loan Parties to enter into and to approve the form of the Pre-Petition Revolving Loan Termination Agreement, dated June 8, 2016 (the "Pre-Petition Revolving Loan Termination Agreement"), in the form attached hereto as **Exhibit 3** and (ii) remit all collections, asset proceeds and payments to DIP Agent and DIP Lenders for application, or deemed application, to the repayment of all Post-Petition Obligations (as hereinafter defined), including, without limitation, all unreimbursed Letters of Credit, which were issued pre-petition, which, in accordance with the terms of the DIP Credit Agreement, shall be deemed to have been issued or provided, as applicable, under the DIP Credit Agreement and the other DIP Loan Documents;

(4)     authorization for the Debtors to grant superpriority administrative claim status, pursuant to § 364(c)(1) of the Bankruptcy Code, to DIP Agent, for the benefit of itself and the other DIP Lenders, in respect of all Post-Petition Obligations;

(5)     as set forth below, approval of certain stipulations by the Debtors as set forth in this Interim Order in connection with the Pre-Petition Revolving Loan Documents, the Term Loan Documents, and the Incremental Term Loan Documents (as each term is defined below);

(6)     as set forth below, authorization to provide adequate protection to Pre-Petition Revolving Agent and Pre-Petition Revolving Lenders, and Term Agent and Term Lenders, each in their respective capacities under the Term Loan Documents (as defined below), and

Incremental Term Loan Agent and Incremental Term Loan Lenders, each in their respective capacities under the Incremental Term Loan Documents (as defined below);

(7) effective only upon entry of a Final Order (as defined below), the waiver of the Debtors' right to assert claims to surcharge against the Collateral (as defined below) pursuant to § 506(c) of the Bankruptcy Code and any "equities of the case" exception in Section 552(b) of the Bankruptcy Code, to the extent set forth below;

(8) the vacation and modification of the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Interim Order to the extent hereinafter set forth;

(9) the setting of a final hearing on the Motion ("Final Hearing") to consider entry of a final order (the "Final Order") authorizing, among other things, the borrowing under the DIP Loan Documents on a final basis, as set forth in the Motion and the DIP Credit Agreement filed with the Court, including the granting to DIP Agent and DIP Lenders the senior security interests and liens described above and super-priority administrative expense claims; and

(10) related relief.

The initial hearing on the Motion having been held by this Court on June 8, 2016 (the "Interim Hearing"), and upon the record made by the Debtors at the Interim Hearing, including the Motion, the *Declaration of Cary Baetz in Support of First Day Motions*, dated June 7, 2016 (the "First-Day Declaration"), the *Declaration of Andrew Yearley in Support of the Debtors' Motion to Approve DIP Financing*, dated June 7, 2016 (the "Yearley Declaration") and the filings and pleadings in the above-captioned chapter 11 cases (the "Cases"), the Court having found that the relief requested in the Motion is in the best interests of Debtors, their estates, their creditors and other parties in interest; and appropriate notice of the Motion, the relief requested

therein, and the Interim Hearing (the "Notice") was appropriate under the circumstances; and the Notice having been served by the Debtors in accordance with Rule 4001(c) on (i) counsel to DIP Agent; (ii) counsel to the Pre-Petition Revolving Agent, (iii) counsel to the Term Agent and the Consenting Term Lenders (as defined in motion), (iv) counsel to the Incremental Term Loan Agent, (v) the office of the United States Trustee (the "U.S. Trustee"), (vi) counsel to the Consenting Incremental Term Lenders (as defined in the Motion); (vii) counsel to the Consenting OpCo Noteholders (as defined in the Motion), (viii) counsel to the Consenting HoldCo Noteholders (as defined In the Motion), (ix) the holders of the thirty (30) largest unsecured claims, on a consolidated basis, against the Debtors' estates (the "30 Largest Unsecured Creditors"), (x) the Internal Revenue Service, (xi) the Securities and Exchange Commission, (xii) the office of the attorneys general for the states in which the Debtors operate and (xiii) certain other parties identified in the certificate of service filed with the Court, including, without limitation, (a) all creditors who have filed or recorded pre-petition liens or security interests against any of the Debtors' assets, (b) all relevant state taxing authorities, and (c) all landlord, owners and/or operators of premises at which any of the Debtor Loan Parties' inventory and/or equipment is located (collectively, the "Noticed Parties") and the opportunity for a hearing on the Motion was appropriate and no other notice need be provided; and after due deliberation sufficient cause appearing therefor;

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:

A.     Petition.  On June 7, 2016 (the "Petition Date"), each Debtor filed a voluntary petition (each, a "Petition") under chapter 11 of the Bankruptcy Code.  The Debtors continue to

operate their businesses and manage their properties as debtors-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

B.      <u>Disposition</u>.  The Motion is hereby granted in accordance with the terms of this Interim Order.  Any objections to the Motion with respect to the entry of this Interim Order that have not been withdrawn, waived or settled are hereby denied and overruled.  This Interim Order shall become effective immediately upon entry.

C.      <u>Jurisdiction and Venue</u>.  The United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  The Motion is a "core" proceeding as defined in 28 U.S.C. §§ 157(b)(2)(A), (D) and (M).  Venue of the Cases and the Motion in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

D.      <u>Notice</u>.  The Notice was given in the manner described in the Motion.  Under the circumstances, the Notice given by the Debtors of the Motion, the Interim Hearing and the relief granted under this Interim Order constitutes due and sufficient notice thereof and complies with Bankruptcy Rules 4001(b) and 4001(c).

E.      <u>Debtor Loan Parties' Acknowledgments and Agreements</u>.  Without prejudice to the rights of any creditors' committee appointed in these Cases under Section 1102 of the Bankruptcy Code (the "<u>Committee</u>") or other parties-in-interest as and to the extent set forth in Section 4.1 of this Interim Order, the Debtors admit, stipulate, acknowledge and agree that:

(i)      <u>Pre-Petition Revolving Loan Documents</u>.  Prior to the commencement of the Cases, Pre-Petition Revolving Agent and the Pre-Petition Revolving Lenders made loans, advances and provided other financial accommodations to Debtor Loan

Parties pursuant to the terms and conditions set forth in (1) the Credit Agreement, dated June 25, 2014, by and among Debtor Borrowers, Debtor Guarantors, Wells Fargo Bank N.A., as Administrative Agent ("Pre-Petition Revolving Agent") and the lenders party thereto ("Pre-Petition Revolving Lenders") (referred to herein as the "Pre-Petition Revolving Credit Agreement"); and (2) all other agreements, documents and instruments executed and/or delivered with, to, or in favor of Pre-Petition Revolving Agent or any Pre-Petition Revolving Lender, including, without limitation, the Guaranty and Security Agreement, by and among Debtor Borrowers, Debtor Guarantors and Pre-Petition Revolving Agent, on behalf of itself and other Pre-Petition Revolving Lenders (the "Pre-Petition Revolving Guaranty and Security Agreement"), all security agreements, notes, guarantees, mortgages, Uniform Commercial Code financing statements and all other related agreements, documents and instruments executed and/or delivered in connection therewith or related thereto (all of the foregoing, together with the Pre-Petition Revolving Credit Agreement, as all of the same have heretofore been amended, supplemented, modified, extended, renewed, restated and/or replaced at any time prior to the Petition Date, collectively, the "Pre-Petition Revolving Loan Documents"). Copies of the operative Pre-Petition Revolving Loan Documents are on file with counsel to the Debtors and available upon reasonable request.

      (ii)      Pre-Petition Revolving Loan Obligations. As of the Petition Date, the Debtors were indebted to Pre-Petition Revolving Agent and the Pre-Petition Revolving Lenders under the Pre-Petition Revolving Loan Documents in respect of Loans, Letters of Credit, Bank Products, and all other Obligations (each as defined in the Pre-Petition Revolving Credit Agreement) in an aggregate outstanding principal amount of not less than $15,003,729, plus interest accrued and accruing thereon, together with all costs, fees, expenses (including

attorneys' fees and legal expenses) and other charges accrued, accruing or chargeable with respect thereto (collectively, the "Pre-Petition Revolving Loan Obligations"). The Pre-Petition Revolving Loan Obligations constitute allowed, legal, valid, binding, enforceable and non-avoidable obligations of Debtor Loan Parties, and are not subject to any offset, defense, counterclaim, avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or any other applicable law, and Debtors do not possess, shall not assert, hereby forever release, and are forever barred from bringing any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of the Pre-Petition Revolving Loan Obligations or liens and security interest securing the same described in clause (E)(iii) below.

   (iii)  Pre-Petition Revolving Loan Collateral. As of the Petition Date, the Pre-Petition Revolving Loan Obligations were fully secured pursuant to the Pre-Petition Revolving Loan Documents by valid, perfected, enforceable and non-avoidable first-priority security interests and liens granted by Debtor Loan Parties to Pre-Petition Revolving Agent, for the benefit of itself and the other Pre-Petition Revolving Lenders, under the Pre-Petition Revolving Loan Documents, upon all of the "Collateral" (as defined in the Pre-Petition Revolving Loan Documents and hereinafter referred to as the "Pre-Petition Revolving Loan Collateral"), subject only to the liens specifically permitted under Section 6.2 of the Pre-Petition Revolving Credit Agreement to the extent that such security interests, liens or encumbrances are (1) valid, perfected and non-avoidable security interests, liens or encumbrances existing as of the Petition Date, and (2) senior to and have not been or are not subject to being subordinated to Pre-Petition Revolving Agent's and Pre-Petition Revolving Lenders' liens on and security interests in the Pre-Petition Revolving Loan Collateral under the Pre-Petition Revolving Loan Documents or

otherwise avoided, and, in each instance, only for so long as and to the extent that such encumbrances are and remain senior and outstanding (hereinafter referred to as the "Permitted Encumbrances"). The Debtors do not possess and will not assert any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of Pre-Petition Revolving Agent's and Pre-Petition Revolving Lenders' liens, claims or security interests in the Pre-Petition Revolving Loan Collateral.

(iv)    Proof of Claim.   The acknowledgment by Debtors of the Pre-Petition Revolving Loan Obligations and the liens, rights, priorities and protections granted to or in favor of Pre-Petition Revolving Agent and Pre-Petition Revolving Lenders in respect of the Pre-Petition Revolving Loan Collateral as set forth herein and in the Pre-Petition Revolving Loan Documents shall be deemed a timely filed proof of claim on behalf of Pre-Petition Revolving Loan Agent and the Pre-Petition Revolving Lenders in these Cases. Pre-Petition Revolving Agent and Pre-Petition Revolving Lenders shall be relieved of the requirement to file proofs of claims in these Cases.

(v)    Term Loan Documents.   Prior to the commencement of the Cases, Term Agent (as defined below) and the Term Lenders (as defined below) made loans, advances and provided other financial accommodations to Debtors pursuant to the terms and conditions set forth in (a) the $400 Million Term Loan Credit Agreement, dated as of June 25, 2014 (as amended, restated, modified, supplemented and replaced from time to time prior to the Petition Date, the "Term Loan Agreement"), by and among SSO, as borrower, Parent, as Guarantor, the lenders party thereto (the "Term Lenders"), and Wilmington Trust, N.A., as successor in interest to Bank of America, N.A., in its capacity as administrative agent and as collateral agent (the

"Term Agent"); and (b) all other agreements, documents and instruments executed and/or delivered with, to or in favor of the Term Lenders or Term Agent, including, without limitation, that certain Guaranty, dated as of June 25, 2014, executed by the Debtor Loan Parties party thereto in favor of the Term Agent (the "Term Loan Guaranty"), and all other security agreements, notes, guarantees, mortgages, Uniform Commercial Code financing statements and all other related agreements, documents and instruments, including any fee letters, executed and/or delivered in connection therewith or related thereto (all the foregoing, together with the Term Loan Agreement, as all of the same have been supplemented, modified, extended, renewed, restated and/or replaced at any time prior to the Petition Date, collectively, the "Term Loan Documents"). Copies of the operative Term Loan Documents are on file with counsel to the Debtors and available upon reasonable request.

(vi)     Term Loan Obligations.   As of the Petition Date, the Debtors were indebted to Term Agent and Term Lenders under the Term Loan Documents in respect of loans and other obligations evidenced thereby in an aggregate outstanding principal amount of not less than $393,000,000, plus interest accrued and accruing thereon, together with all costs, fees, expenses (including attorneys' fees and legal expenses) and other charges accrued, accruing or chargeable with respect thereto (collectively, the "Term Obligations"). The Term Obligations constitute allowed, legal, valid, binding, enforceable and non-avoidable obligations of Debtors, and are not subject to any offset, defense, counterclaim, avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or any other applicable law, and Debtors do not possess, shall not assert, hereby forever release, and are forever barred from bringing any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect

4400612.4

the validity, enforceability and non-avoidability of any of the Term Obligations, or the liens and security interests securing the same described in clause (E)(vii) below.

(vii)     Term Loan Collateral. As of the Petition Date, the Term Obligations were fully secured pursuant to the Term Loan Documents by valid, perfected, enforceable and non-avoidable security interests and liens granted by Debtors to Term Agent, for the benefit of itself and the other Term Lenders under the Term Loan Documents ("Term Loan Liens"), upon all of the "Collateral" as defined in the Term Loan Documents (the "Term Collateral"). The Debtors do not possess and will not assert any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of Term Agent's or Term Lenders' Term Loan Liens in the Term Collateral.

(viii)     Term Agent's Proof of Claim. The acknowledgment by Debtors of the Term Obligations, the Term Loan Liens and any other rights, priorities and protections granted to or in favor of Term Agent and Term Lenders in respect of the Term Collateral as set forth herein and in the Term Loan Documents shall be deemed a timely filed proof of claim on behalf of Term Agent and Term Lenders in these Cases, and the Term Agent and Term Lenders shall be relieved of the requirement to file proofs of claims in these Cases.

(ix)     Incremental Term Loan Documents. Prior to the commencement of the Cases, Incremental Term Loan Agent (as defined below) and the Incremental Term Loan Lenders (as defined below) made loans, advances and provided other financial accommodations to Debtors pursuant to the terms and conditions set forth in (a) the Term Loan Agreement, as supplemented by the Incremental Term Supplement (Tranche A), dated as of May 13, 2015, (as amended, restated, modified, supplemented and replaced from time to time prior to the Petition Date, the "Incremental Term Loan Supplement"), by and among Parent, SSO, as borrower,

GPOR, Nomac, PTL, PTL Prop, SSE and SSLC, as guarantors, Wilmington Trust, N.A, as successor in interest to Bank of America, N.A., as agent ("Incremental Term Loan Agent"), and the lenders party thereto (the "Incremental Term Loan Lenders"); and (b) all other agreements, documents and instruments, including, without limitation, that certain Tranche A Incremental Guaranty, dated as of May 13, 2015, executed by Parent, GPOR, Nomac, PTL, PTL Prop, SSE and SSLC in favor of Incremental Term Loan Agent for the benefit of the Incremental Term Loan Agent and the Incremental Term Lenders (the "Incremental Term Loan Guaranty"), including, without limitation, all security agreements, notes, guarantees, mortgages, Uniform Commercial Code financing statements and all other related agreements, documents and instruments, including any fee letters, executed and/or delivered in connection therewith or related thereto (all the foregoing, together with the Incremental Term Loan Supplement, as all of the same have been supplemented, modified, extended, renewed, restated and/or replaced at any time prior to the Petition Date, collectively, the "Incremental Term Loan Documents"). Copies of the operative Incremental Term Loan Documents are on file with counsel to the Debtors and available upon reasonable request.

(x)    Incremental Term Loan Obligations.  As of the Petition Date, the Debtors were indebted to the Incremental Term Loan Agent and Incremental Term Loan Lenders under the Incremental Term Loan Documents in respect of loans and other obligations evidenced thereby in an aggregate outstanding principal amount of approximately $99,000,000, plus interest accrued and accruing thereon, together with all costs, fees, expenses (including attorneys' fees and legal expenses) and other charges accrued, accruing or chargeable with respect thereto (collectively, the "Incremental Term Loan Obligations"). The Incremental Term Loan Obligations constitute allowed, legal, valid, binding, enforceable and non-avoidable

obligations of Debtors, and are not subject to any offset, defense, counterclaim, avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or any other applicable law, and Debtors do not possess, shall not assert, hereby forever release, and are forever barred from bringing any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of the Incremental Term Loan Obligations or the liens and security interests securing the same described in clause (E)(xi) below.

(xi)        _Incremental Term Collateral._  As of the Petition Date, the Incremental Term Loan Obligations were fully secured pursuant to the Incremental Term Loan Documents by valid, perfected, enforceable and non-avoidable junior security interests and liens granted by Debtors to Incremental Term Loan Agent, for the benefit of itself and the other Incremental Term Loan Lenders under the Incremental Term Loan Documents ("Incremental Term Loan Liens"), upon all of the "Collateral" as defined in the Incremental Term Loan Documents (the "Incremental Term Collateral").  The Incremental Term Loan Liens in the Incremental Term Collateral are junior and subordinate only to the liens of Term Agent and Term Lenders pursuant to the terms of the Incremental Term Loan Documents.  The Debtors do not possess and will not assert any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of Incremental Term Loan Agent's or Incremental Term Loan Lenders' Incremental Term Loan Liens in the Incremental Term Collateral.

(xii)        _Incremental Term Loan Agent's Proof of Claim._ The acknowledgment by Debtors of the Incremental Term Loan Obligations, the Incremental Term Loan Liens and any other rights, priorities and protections granted to or in favor of Incremental Term Loan Agent

4400612.4

and Incremental Term Loan Lenders in respect of the Incremental Term Collateral as set forth

herein and in the Incremental Term Loan Documents shall be deemed a timely filed proof of

claim on behalf of Incremental Term Loan Agent and Incremental Term Loan Lenders in these

Cases, and the Incremental Term Loan Agent and Incremental Term Loan Lenders shall be

relieved of the requirement to file proofs of claims in these Cases.

      F.      <u>Findings Regarding the Post-Petition Financing</u>.

      (i)      <u>Post-Petition Financing</u>.  The Debtors have requested from each of the

DIP Agent and the DIP Lenders, and the DIP Agent and DIP Lenders are willing, to extend

certain loans, advances and other financial accommodations on the terms and conditions set forth

in this Interim Order, the DIP Credit Agreement and the other DIP Loan Documents,

respectively.

      (ii)      <u>Need for Post-Petition Financing</u>.  The Debtor Loan Parties have an

immediate and critical need to obtain the financing, including the continued use of cash

collateral, in order to permit, among other things, the orderly continuation of the operation of

their businesses, to maintain business relationships with their vendors, suppliers and customers,

to pay their employees, to repay the Pre-Petition Revolving Loan Obligations, to provide back-

to-back replacement letters of credit in respect of the letters of credit currently outstanding under

the Pre-Petition Revolving Credit Agreement and to otherwise fund their working capital and

operational needs.  Access to the financing requested in the Motion is essential to the Debtors'

continued viability as the Debtors seek to maximize the value of the assets of the Estates (as

defined below) for the benefit of all creditors of the Debtors.  The ability of the Debtor Loan

Parties to obtain sufficient working capital and liquidity through the proposed post-petition

financing arrangements with the DIP Agent and DIP Lenders as set forth in this Interim Order,

4400612.4

the DIP Credit Agreement, and other DIP Loan Documents, as applicable, is vital to the preservation and maintenance of the going concern value of each Debtor. Accordingly, the Debtor Loan Parties have an immediate need to obtain the post-petition financing in order to, among other things, permit the orderly continuation of the operation of their businesses, minimize the disruption of their business operations, and preserve and maximize the value of the assets of the Debtors' bankruptcy estates (as defined under § 541 of the Bankruptcy Code, the "Estates") in order to maximize the recovery to all creditors of the Estates.

(iii)    No Credit Available on More Favorable Terms. The Debtor Loan Parties are unable to procure financing in the form of unsecured credit allowable under § 503(b)(1) of the Bankruptcy Code, as an administrative expense under § 364(a) or (b) of the Bankruptcy Code, or in exchange for the grant of an administrative expense priority pursuant to § 364(c)(1), 364(c)(2) or 364(c)(3) of the Bankruptcy Code, without granting liens on assets. The Debtor Loan Parties have been unable to procure the necessary financing on terms more favorable, taken as a whole, than the financing offered by each of the DIP Agent and DIP Lenders pursuant to the DIP Loan Documents.

(iv)    Budget. The Debtors have prepared and delivered to DIP Agent and DIP Lenders an initial 13-week budget (as defined in the DIP Credit Agreement, the "Budget"). Such Budget has been thoroughly reviewed by the Debtors and their management and sets forth, among other things, the projected cash receipts and disbursements of the Debtors for the periods covered thereby. The Debtors represent that the Budget is achievable in accordance with the terms of the DIP Loan Documents and this Interim Order and will allow the Debtors to operate at all times during these Cases without the accrual of unpaid administrative expenses. The DIP Agent and DIP Lenders are relying upon the Debtors' compliance with the Budget in accordance

4400612.4

with Section 5.17 of the DIP Credit Agreement, the other DIP Loan Documents, and this Interim Order in determining to enter into the post-petition financing arrangements provided for herein.

(v)        <u>Business Judgment and Good Faith Pursuant to § 364(e)</u>. The terms of the DIP Loan Documents and this Interim Order are fair, just and reasonable under the circumstances, are ordinary and appropriate for secured financing to debtors-in-possession, reflect the Debtors' exercise of their prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration. The terms and conditions of the DIP Loan Documents and this Interim Order have been negotiated in good faith and at arms' length by and among the Debtor Loan Parties, DIP Agent, Term Agent and Incremental Term Loan Agent with all parties being represented by counsel. Any credit extended under the terms of this Interim Order shall be deemed to have been extended in good faith by the DIP Agent and DIP Lenders, as that term is used in § 364(e) of the Bankruptcy Code.

(vi)        <u>Good Cause</u>. The relief requested in the Motion is necessary, essential and appropriate, and is in the best interest of and will benefit the Debtors, their creditors and their Estates, as its implementation will, among other things, provide the Debtors with the necessary liquidity to (1) minimize disruption to the Debtors' businesses and on-going operations, (2) preserve and maximize the value of the Debtors' Estates for the benefit of all the Debtors' creditors, and (3) avoid immediate and irreparable harm to the Debtors, their creditors, their businesses, their employees, and their assets.

(vii)        <u>Immediate Entry</u>. Sufficient cause exists for immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(c)(2). No party appearing in the Cases has filed or made an objection to the relief sought in the Motion or the entry of this Interim Order, or

4400612.4

any objections that were made (to the extent such objections have not been withdrawn) are hereby overruled.

Based upon the foregoing, and after due consideration and good cause appearing therefor;

IT IS HEREBY ORDERED THAT:

Section 1.     Authorization and Conditions to Financing.

1.1     Motion Granted.  The Motion is granted in accordance with Bankruptcy Rule 4001(c)(2) to the extent provided in this Interim Order.  Except as otherwise expressly provided in this Interim Order, any objection to the entry of this Interim Order that has not been withdrawn, waived, resolved or settled, is hereby denied and overruled on the merits.

1.2     Authorization to Borrow, Guaranty, and Use Loan Proceeds.  Debtor Borrowers are hereby authorized and empowered to immediately borrow and obtain Loans, Letters of Credit, Bank Products and to incur indebtedness and other Obligations (as defined in the DIP Credit Agreement and hereinafter referred to as the "Post-Petition Obligations"), and the Debtor Guarantors are hereby authorized to guaranty such Post-Petition Obligations, up to an aggregate principal amount of $100 million, all pursuant to the terms and conditions of this Interim Order, the DIP Credit Agreement, the DIP Guaranty and Security Agreement and the other DIP Loan Documents, during the period commencing on the date of this Interim Order through and including the date of the Final Hearing as set forth in Section 6 of this Interim Order (the "Interim Financing Period") in the amounts set forth in the Budget covered by the Interim Financing Period.  Subject to the terms and conditions contained in this Interim Order and the DIP Loan Documents, Debtor Borrowers shall use the proceeds of the Loans, Letters of Credit, Bank Products and other credit and financial accommodations provided by DIP Agent and DIP Lenders under the DIP Credit Agreement and the other DIP Loan Documents (i) on the Closing Date, to refinance the Pre-Petition Revolving Loan Obligations and for the payment of expenses

set forth in the Budget and amounts owing to DIP Agent and DIP Lenders in accordance with the terms and conditions of the DIP Loan Documents and this Interim Order and (ii) thereafter, for working capital of the Debtor Loan Parties and other general corporate purposes in accordance with the Budget.

      1.3    <u>DIP Loan Documents</u>

      (a)    <u>Authorization</u>. Debtor Loan Parties are hereby authorized and directed to enter into, execute, deliver, perform, and comply with all of the terms, conditions and covenants of the DIP Credit Agreement and the other DIP Loan Documents. Upon execution and delivery of the DIP Credit Agreement and the other DIP Loan Documents, such agreements and documents shall constitute valid and binding obligations of the Debtors Loan Parties, enforceable against each Debtor party thereto in accordance with the terms of such agreements, documents and this Interim Order. No obligation, payment, transfer or grant of security under the DIP Credit Agreement, the other DIP Loan Documents or this Interim Order shall be stayed (except as otherwise set forth in this Interim Order), restrained, voidable, or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under § 502(d) of the Bankruptcy Code), or be subject to any defense, reduction, setoff, recoupment or counterclaim.

      (b)    <u>Approval; Evidence of Borrowing Arrangements</u>. The DIP Loan Documents (including, without limitation, the DIP Credit Agreement) are approved to the extent necessary to implement the terms and provisions of this Interim Order. The DIP Loan Documents shall be sufficient and conclusive evidence of (a) the borrowing arrangements by and among Debtor Loan Parties, DIP Agent and DIP Lenders, and (b) each Debtor Loan Party's assumption and adoption of all of the terms, conditions, and covenants of the DIP Credit

Agreement and the other DIP Loan Documents for all purposes, including, without limitation, to refinance the Pre-Petition Revolving Loan Obligations, to provide back-to-back replacement letters of credit in respect to the letters of credit outstanding under the Pre-Petition Revolving Credit Agreement, and to the extent applicable, the payment of all Post-Petition Obligations arising thereunder, including, without limitation, all principal, interest, fees and other expenses, including, without limitation, all of DIP Agent's and DIP Lenders' consultant fees, professional fees, attorney fees and legal expenses, as more fully set forth in the DIP Loan Documents.

(c)    _Amendment._  Subject to the terms and conditions of the DIP Credit Agreement and the other DIP Loan Documents, Debtors, DIP Agent and DIP Lenders may amend, modify, supplement or waive any provision of the DIP Loan Documents (a "DIP Loan Amendment") without further approval or order of the Court so long as: (a) such DIP Loan Amendment is not material (for purposes hereof, a "material" DIP Loan Amendment shall mean, any DIP Loan Amendment that operates to increase the interest rate other than as currently provided in the DIP Loan Documents, increase the Maximum Credit (as defined in the DIP Credit Agreement), grant additional liens, add specific new events of default or enlarge the nature and extent of default remedies available to DIP Agent and DIP Lenders following an event of default, or otherwise modify any terms and conditions in any DIP Loan Document in a manner materially less favorable to Debtors) and is undertaken in good faith by DIP Agent, DIP Lenders and Debtors; (b) the Debtors provide at least two (2) business days' written notice of the DIP Loan Amendment (the "DIP Loan Amendment Notice") to (i) the U.S. Trustee, (ii) counsel to any Committee, or in the event no such Committee is appointed at the time of such DIP Loan Amendment, the 30 Largest Unsecured Creditors, (iii) counsel to the Term Agent and Consenting Term Lenders, (iv) counsel to the Incremental Term Loan Agent, (v) counsel to the

Consenting Incremental Term Lenders, (vi) counsel to the Consenting OpCo Noteholders, and (vii) counsel to the Consenting HoldCo Noteholders (collectively, the "DIP Amendment Notice Parties"), (c) the Debtors file the DIP Loan Amendment Notice with the Court; and (d) no objection to the DIP Loan Amendment is filed with the Court within two (2) business days from the later of the date the DIP Loan Amendment Notice is served or the date the DIP Loan Amendment Notice is filed with the Court in accordance with this Section. Any material DIP Loan Amendment to the DIP Loan Documents must be approved by the Court to be effective.

      1.4    Payment of Pre-Petition Revolving Loan Obligations. The Debtor Loan Parties are authorized to execute and deliver the Pre-Petition Revolving Loan Termination Agreement and performance of the transactions and undertakings set forth therein are hereby approved in all respects. The Debtor Loan Parties are hereby authorized to pay all outstanding Pre-Petition Revolving Loan Obligations in cash in full, including without limitation, to provide one or more replacements or backstop Letters of Credit issued under the DIP Credit Agreement and/or provide that any such Letters of Credit under the Pre-Petition Revolving Credit Agreement are deemed to be issued under the DIP Credit Agreement, the other DIP Loan Documents and this Interim Order. The payment and satisfaction in full of the Pre-Petition Revolving Loan Obligations shall be indefeasible upon the expiration of the Objection Period (as defined below) if no Objection Proceeding (as defined below) is timely and properly commenced prior to the end of the Objection Period as provided in paragraph 4.1 herein (or, in the event that such Objection Proceeding is timely and commenced, on the date on which any Order entered by the Court in favor of the Pre-Petition Revolving Agent and the Pre-Petition Revolving Lenders in such proceeding becomes final and non-appealable), at which time the payment and satisfaction in full of the Pre-Petition Revolving Loan Obligations shall become indefeasible (the "Pre-

4400612.4

Petition Revolving Loan Discharge"). The liens and security interests granted in favor of the Pre-Petition Revolving Agent, on behalf of itself and the Pre-Petition Revolving Lenders, shall be shall be automatically released and terminated upon such Pre-Petition Revolving Loan Discharge. The Continuing Obligations (as defined in the Pre-Petition Revolving Loan Termination Agreement), including the indemnification of the Pre-Petition Revolving Agent and the Pre-Petition Revolving Lenders by the Debtor Loan Parties and to the extent provided in the Pre-Petition Revolving Loan Documents, shall continue and survive the Pre-Petition Revolving Loan Discharge.

1.5 <u>Payments and Application of Payments</u>. The Debtors are authorized and directed to make all payments and transfers of Estate property to the DIP Agent as provided for, permitted and/or required under the DIP Credit Agreement and the other DIP Loan Documents, which payments and transfers shall not be avoidable or recoverable from the DIP Agent or any DIP Lender under §§ 547, 548, 550, 553 or any other section of the Bankruptcy Code, or any other claim, charge, assessment, or other liability, whether by application of the Bankruptcy Code, other law or otherwise. All proceeds of the Collateral (as defined herein) received by the DIP Agent or any DIP Lender, and any other amounts or payments received by the DIP Agent or any DIP Lender in respect of the Post-Petition Obligations, may be applied or deemed to be applied by the DIP Agent, in its discretion, to the repayment of the Post-Petition Obligations, all in accordance with the DIP Credit Agreement, the other DIP Loan Documents and this Interim Order. Without limiting the generality of the foregoing, the Debtor Loan Parties are authorized and directed, without further order of this Court, to pay or reimburse DIP Agent and the DIP Lenders for all present and future costs and expenses, including, without limitation, all professional fees, consultant fees and legal fees and expenses paid or incurred by the DIP Agent

4400612.4

and the DIP Lenders in connection with the financing transactions as provided in this Interim Order and the DIP Loan Documents, all of which shall be and are included as part of the principal amount of the Post-Petition Obligations and secured by the Collateral (as defined herein).

       1.6     Continuation of Pre-Petition Procedures.  In accordance with the terms of the DIP Loan Documents, all practices and procedures for the payment and collection of proceeds of the Collateral (as defined herein), the turnover of cash, the delivery of property to the DIP Agent and the DIP Lenders, including the existing Control Agreements (as such term is defined in the DIP Credit Agreement) currently in place with Pre-Petition Revolving Agent, and any other similar lockbox or blocked depository bank account arrangements, shall be ratified, reaffirmed and assumed by Debtor Loan Parties, are hereby approved and shall continue without interruption after the commencement of the Cases.

Section 2.     Post-Petition Lien; Superpriority Administrative Claim Status.

       2.1     Post-Petition Lien.

       (a)     Post-Petition Lien Granting.  To secure the prompt payment and performance of any and all Obligations (as defined in DIP Credit Agreement) of Debtor Loan Parties to the DIP Agent and DIP Lenders of whatever kind, nature or description, absolute or contingent, now existing or hereafter arising, DIP Agent, for the benefit of itself and the other DIP Lenders, shall have and is hereby granted, effective as of the Petition Date, valid and perfected first-priority security interests and liens, superior to all other liens, claims or security interests that any creditor of the Debtors' Estates may have (but subject to the Permitted Liens and Claims (as defined below), as and to the extent expressly provided in Section 2.1.3, below), in and upon all (x) of the "Collateral" (as defined in the DIP Guaranty and Collateral Agreement), (y) upon and subject to entry of the Final Order, all proceeds of present and future

claims, rights, interests, assets and properties recovered by or on behalf of each Debtor Loan Party or any trustee of a Debtor Loan Party (whether in the Chapter 11 Cases or any subsequent case to which any Chapter 11 Case is converted), including without, limitation, all such property recovered as a result of transfers or obligations avoided or actions maintained or taken pursuant to, inter alia, Sections 542, 545, 548, 549, 550, 552 and 553 of the Bankruptcy Code (the "Avoidance Action Proceeds"), and (z) assets and properties not subject to valid, perfected and non-avoidable liens as of the Petition Date (collectively, the "Collateral"). For the avoidance of doubt, the Collateral shall not include any property comprising the Term Collateral or the Incremental Term Collateral.

(b) Lien Priority in Collateral. The liens and security interests of DIP Agent and DIP Lenders granted under the DIP Loan Documents and this Interim Order in the Collateral securing all Obligations (as defined in DIP Credit Agreement) shall be first and senior in priority to all other interests and liens of every kind, nature and description, whether created consensually, by an order of the Court or otherwise, including, without limitation, liens or interests granted in favor of third parties in conjunction with §§ 363, 364 or any other section of the Bankruptcy Code or other applicable law; provided, however, that DIP Agent's and DIP Lenders' liens on and security interests in the Collateral shall be subject only to (a) Permitted Encumbrances, and (b) the Carve-Out (as defined below) solely to the extent provided for in this Interim Order (the foregoing clauses (a) and (b) are collectively referred to herein as the "Permitted Liens and Claims").

(c) Post-Petition Lien Perfection. This Interim Order shall be sufficient and conclusive evidence of the priority, perfection and validity of the post-petition liens and security interests granted herein, effective as of the Petition Date, without any further

act and without regard to any other federal, state or local requirements or law requiring notice, filing, registration, recording or possession of the Collateral, or other act to validate or perfect such security interest or lien, including without limitation, control agreements with any financial institution(s) party to a Control Agreement or holding a or other similar lockbox or blocked depository account consisting of Collateral (a "Perfection Act").  Notwithstanding the foregoing, if DIP Agent, shall, in its sole discretion, elect for any reason to file, record or otherwise effectuate any Perfection Act, then DIP Agent is authorized to perform such act, and the Debtor Loan Parties are authorized and directed to perform such act to the extent necessary or required by DIP Agent, which act or acts shall be deemed to have been accomplished as of the date and time of entry of this Interim Order notwithstanding the date and time actually accomplished, and in such event, the subject filing or recording office is authorized to accept, file or record any document in regard to such act in accordance with applicable law.  DIP Agent may choose to file, record or present a certified copy of this Interim Order in the same manner as a Perfection Act, which shall be tantamount to a Perfection Act, and, in such event, the subject filing or recording office is authorized to accept, file or record such certified copy of this Interim Order in accordance with applicable law.  Should DIP Agent so choose and attempt to file, record or perform a Perfection Act, no defect or failure in connection with such attempt shall in any way limit, waive or alter the validity, enforceability, attachment, or perfection of the post-petition liens and security interests granted herein by virtue of the entry of this Interim Order.

(d)    Nullifying Pre-Petition Restrictions to Post-Petition Financing. Subject to the entry of a Final Order, notwithstanding anything to the contrary contained in any pre-petition agreement, contract, lease, document, note or instrument to which any Debtor is a party or under which any Debtor is obligated, except as otherwise permitted under the DIP Loan

Documents, any provision that restricts, limits or impairs in any way any Debtor from granting DIP Agent security interests in or liens upon any of the Collateral (including, among other things, any anti-lien granting or anti-assignment clauses in any leases or other contractual arrangements to which any Debtor is a party) under the DIP Loan Documents or this Interim Order, as applicable, or otherwise entering into and complying with all of the terms, conditions and provisions hereof or of the DIP Loan Documents, shall not (a) be effective and/or enforceable against any such Debtor(s), DIP Agent or DIP Lender(s), as applicable, or (b) adversely affect the validity, priority or enforceability of the liens, security interests, claims, rights, priorities and/or protections granted to DIP Agent and DIP Lenders pursuant to this Interim Order or the DIP Loan Documents, in each case, to the maximum extent permitted under the Bankruptcy Code and other applicable law.

2.2   <u>Superpriority Administrative Expenses</u>.

(a)   <u>DIP Loans</u>.   For all Post-Petition Obligations now existing or hereafter arising pursuant to this Interim Order, the DIP Loan Documents or otherwise, DIP Agent, for the benefit of itself and the other DIP Lenders, is granted an allowed superpriority administrative claim pursuant to § 364(c)(1) of the Bankruptcy Code, having priority in right of payment over any and all other obligations, liabilities and indebtedness of Debtors, whether now in existence or hereafter incurred by Debtors, and over any and all administrative expenses or priority claims of the kind specified in, or ordered pursuant to, inter alia §§ 105, 326, 328, 330, 331, 364, 365, 503(b), 506(c) (subject to the entry of a Final Order), 507(a), 507(b), 546(c), 726, 1113 or 1114 of the Bankruptcy Code, (including the 507(b) claims (as defined below), and whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment), which allowed superpriority administrative claim shall be

payable from and have recourse to all pre-petition and post-petition property of the Debtors and all proceeds thereof (the "DIP Loan Superpriority Claim").

   2.3 Carve-Out. Upon DIP Agent providing written notice to Debtor Loan Parties, Debtors' lead counsel, counsel to any Committee and the U.S. Trustee stating that one or more Events of Default (as defined in the DIP Credit Agreement) have occurred and that the Post Carve-Out Trigger Notice Cap (defined below) has been invoked, then the liens in the Collateral and any superpriority administrative expense claims of DIP Agent, DIP Lenders, and the Adequate Protection Claims of each of Pre-Petition Revolving Loan Agent and Pre-Petition Revolving Loan Lenders, Term Agent, Term Lenders, the Incremental Term Loan Agent and the Incremental Term Loan Lenders, shall each be subject only to the right of payment of the Carve-Out.

    (a) "Carve-Out" means the sum of (a) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (c) below); (b) all reasonable fees and expenses up to $50,000 incurred by a trustee under Section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (c) below); (c) to the extent allowed by the Bankruptcy Court at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses (the "Allowed Professional Fees") incurred by persons or firms retained by the Debtors or any official committee appointed by the Bankruptcy Court (such committee, a "Committee"), if any, whose retention is approved by the Bankruptcy Court pursuant to Sections 327, 328, or 1103 of the Bankruptcy Code (the "Professionals"), subject to the terms of the Interim Order, the Final Order and any other interim or other compensation order entered by the Bankruptcy Court that are incurred (i) at any time

before delivery by the DIP Agent of a Carve-Out Trigger Notice (as defined below), whether allowed by the Bankruptcy Court prior to or after delivery of a Carve-Out Trigger Notice, in an amount not to exceed $500,000 to the extent allowed at any time, whether by interim order, procedural order, or otherwise; and (ii) after the delivery of a Carve-Out Trigger Notice in an aggregate amount not to exceed $3,000,000, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amount set forth in this clause (ii) being the "Post-Carve-Out Trigger Notice Cap").  For purposes of the foregoing, "Carve-Out Trigger Notice" shall mean a written notice delivered by the DIP Agent to the Debtor Loan Parties, their lead counsel, counsel to any Committee, if any, and the U.S. Trustee, which notice may be delivered following the occurrence and during the continuation of an Event of Default under the DIP Credit Agreement or this Interim Order stating that the Post-Carve-Out Trigger Notice Cap has been invoked.  Nothing herein shall be construed to impair the ability of any party to object to the fees, expenses, reimbursement or compensation described in clauses (a), (b), (c)(i) or (c)(ii) above, on any grounds.

(b)    Excluded Professional Fees.  Notwithstanding anything to the contrary in this Interim Order, neither the Carve-Out nor the proceeds of Collateral or any Loans, Letters of Credit or any other credit or financial accommodations provided under or in connection with the DIP Loan Documents shall be used to pay any Allowed Professional Fees or any other fees or expenses incurred by any Professional in connection with any of the following:

(i)    an assertion or joinder in any claim, counter-claim, action, proceeding, application, motion, objection, defense or other contested matter seeking any order, judgment, determination or similar relief: (A) challenging the amount, legality, validity, priority, perfection, or enforceability of (aa) the Pre-Petition Revolving Loan

Obligations or Pre-Petition Revolving Loan Agent's and any Pre-Petition Revolving Loan Lender's liens on and security interests in the Pre-Petition Revolving Loan Collateral, (bb) Post-Petition Obligations or DIP Agent's or DIP Lenders' liens on and security interests in the Collateral, and (cc) the Pre-Petition Revolving Lender Adequate Protection Claims (as defined below) and the Pre-Petition Revolving Lender Adequate Protection Liens (as defined below); (B) invalidating, setting aside, avoiding or subordinating, in whole or in part, (aa) the Pre-Petition Revolving Loan Obligations or the Pre-Petition Revolving Loan Agent's and Pre-Petition Revolving Lenders' liens on and security interests in the Pre-Petition Revolving Loan Collateral, (bb) the Post-Petition Obligations or DIP Agent's or DIP Lenders' liens on and security interests in the Collateral, or (cc) the Pre-Petition Revolving Lender Adequate Protection Claims or the Pre-Petition Revolving Lender Adequate Protection Liens; or (C) preventing, hindering or delaying DIP Agent's or DIP Lenders' assertion or enforcement of any lien, claim, right or security interest or realization upon any Collateral in accordance with the terms and conditions of this Interim Order;

(ii)     a request to use Cash Collateral (as such term is defined in section 363 of the Bankruptcy Code) without the prior written consent of DIP Agent in accordance with the terms and conditions of this Interim Order;

(iii)     a request for authorization to obtain debtor-in-possession financing or other financial accommodations pursuant to section 364(c) or section 364(d) of the Bankruptcy Code, other than as provided in this Interim Order, without the prior written consent of DIP Agent;

4400612.4

(iv)    the commencement or prosecution of any action or proceeding of any claims, causes of action or defenses against Pre-Petition Revolving Loan Agent, any Pre-Petition Revolving Loan Lender, or any of their respective officers, directors, employees, agents, attorneys, affiliates, successors or assigns, including, without limitation, for lender liability or any attempt to recover or avoid any claim or interest from Pre-Petition Revolving Loan Agent, or any Pre-Petition Revolving Loan Lender under chapter 5 of the Bankruptcy Code (the "Avoidance Actions");

(v)    the cost of investigation into any claims against Pre-Petition Revolving Loan Agent or any Pre-Petition Revolving Loan Lender arising under or in connection with the Pre-Petition Revolving Loan Documents in excess of $50,000;

(vi)    any act which has or could materially and adversely modify or compromise the rights and remedies of DIP Agent or any DIP Lender under this Interim Order, or which results in the occurrence of an Event of Default under any DIP Loan Documents, or this Interim Order; or

(vii)    after delivery of a Carve-Out Trigger Notice, any success, completion, back-end or similar fees.

(c)    Carve-Out Reserve. At DIP Agent's discretion, DIP Agent may, at any time and in any increment in accordance with the DIP Credit Agreement, establish a Reserve (the "Carve-Out Reserve") against the amount of Revolving Loans and Letters of Credit that would otherwise be available to DIP Borrowers in respect of the Carve-Out.

2.4    Payment of Carve-Out. Payment of any Carve-Out, whether by or on behalf of the DIP Agent or any DIP Lender, shall not and shall not be deemed to reduce the Post-Petition Obligations, and shall not and shall not be deemed to subordinate any of DIP Agent's or

4400612.4

DIP Lender's liens and security interests in the Collateral, the Pre-Petition Revolving Loan Adequate Protection Claim (as defined below), or the DIP Loan Superpriority Claim or the Pre-Petition Revolving Loan Adequate Protection Superpriority Claim to any junior pre- or post-petition lien, interest or claim in favor of any other party.  DIP Agent and DIP Lenders shall not, under any circumstance, be responsible for the direct payment or reimbursement of any fees or disbursements of any Professionals incurred in connection with the Case under any chapter of the Bankruptcy Code, and nothing in Section 2.3 of this Interim Order shall be construed to obligate DIP Agent or any DIP Lender in any way, to pay compensation to or to reimburse expenses of any Professional, or to ensure that the Debtors have sufficient funds to pay such compensation or reimbursement.

     2.5    <u>Adequate Protection.</u>

     (a)    <u>Authorization to Use Cash Collateral</u>.  Subject to the terms and conditions of this Interim Order, the DIP Loan Documents, and in accordance with the Budget, DIP Loan Parties shall be and are hereby authorized to use the Cash Collateral (as defined in section 363 of the Bankruptcy Code) subject to the pre-petition liens and security interests granted to the Pre-Petition Revolving Agent and the Pre-Petition Revolving Lenders.  Nothing in this Interim Order shall authorize the disposition of any assets of the Debtors or their Estate outside the ordinary course of business, or any DIP Loan Parties' use of Cash Collateral or other proceeds resulting therefrom, except as expressly permitted in this Interim Order, the DIP Loan Documents Agreements and in accordance with the Budget.

     (b)    <u>Pre-Petition Revolving Lender Adequate Protection</u>.  As adequate protection for the Continuing Obligations (as defined in the Pre-Petition Revolving Loan Termination Agreement) (the "<u>Pre-Petition Revolving Adequate Protection Claims</u>"), the Pre-

Petition Revolving Loan Agent, for the benefit of itself and the Pre-Petition Revolving Loan Lenders, is hereby granted pursuant to §§ 361 and 363 of the Bankruptcy Code, effective and perfected as of the date of the entry of this Interim Order and without the necessity of the execution or filing of mortgages, security agreements, pledge agreements, financing statements or other agreements, (A) valid, binding, enforceable and perfected replacement liens upon and security interests in all Collateral, including cash collateral, and (B) a security interest in and lien on all assets of the Debtors (collectively, the "Pre-Petition Revolving Loan Adequate Protection Liens"). The Pre-Petition Revolving Loan Adequate Protection Liens described in clause (A) shall be junior and subordinate only to (i) the Carve-Out to the extent set forth herein, (ii) the Permitted Liens and Claims, and (iii) DIP Agent's and DIP Lenders' liens on the Collateral to secure the Post-Petition Obligations, and shall otherwise be senior to all other security interests in, liens on, or claims against any of the Collateral (including the Cash Collateral), and the Pre-Petition Revolving Loan Adequate Protection Liens described in clause (B) shall be junior and subordinate only (i) to the Carve-Out to the extent set forth herein, (ii) the liens of DIP Agent and DIP Lenders securing the Post-Petition Obligations, and (iii) with respect to the Term Collateral and the Incremental Term Collateral, to the Term Loan Liens, the Incremental Term Loan Liens, the Term Loan Adequate Protection Liens and the Incremental Term Loan Adequate Protection Liens; provided that the Pre-Petition Revolving Loan Adequate Protection Liens shall only encumber the Avoidance Action Proceeds upon entry of the Final Order.

(c)    Pre-Petition Revolving Section 507(b) Priority Claims.    As additional adequate protection for the Continuing Obligations, the imposition of the automatic stay and the subordination to the Carve-Out, the Pre-Petition Revolving Loan Agent, for the benefit of itself and the Pre-Petition Revolving Loan Lenders, is hereby granted as and to the

extent provided by section 507(b) of the Bankruptcy Code an allowed superpriority administrative expense claim in each of the Cases and any successor bankruptcy cases (the "Pre-Petition Revolving Loan Adequate Protection Superpriority Claim").    The Pre-Petition Revolving Loan Adequate Protection Superpriority Claim shall be junior only to (A) the Carve-Out, and (B) the DIP Loan Superpriority Claim, and shall otherwise have priority over all administrative expense claims and unsecured claims against Debtors and their Estates now existing or hereafter arising, of any kind or nature whatsoever.

(d)    Pre-Petition Revolving Agent's Fees and Expenses.    The Debtor Loan Parties are authorized to make current cash payments to Pre-Petition Revolving Agent in order to reimburse Pre-Petition Revolving Agent for the reasonable, documented professional fees and expenses incurred by the Pre-Petition Revolving Agent and the Pre-Petition Revolving Lenders, provided that such fees and expenses shall be limited to those of one legal counsel, one local counsel and one financial advisor.

(e)    Term Loan Adequate Protection. As adequate protection for the diminution in the value of their interests in the Term Collateral on account of the Debtors' use of such Term Collateral, Term Agent, for the benefit of itself and the Term Lenders (collectively, the "Term Loan Adequate Protection Parties"), shall be granted the protection set forth in this Section 2.5(e), pursuant to sections 361, 507, and 363(e) of the Bankruptcy Code for the consent to the use of its Term Collateral, consent to the transactions contemplated by the DIP Loan Documents and this Interim Order and for the diminution in the value of the pre-petition security interests of such party, whether or not such diminution in value results from the sale, lease or use by the Debtors of the Term Collateral, the stay of enforcement of any pre-petition security interest arising from section 362 of the Bankruptcy Code, or otherwise (each, a "Term

Diminution Claim"). As security for and solely to the extent of any Term Diminution Claim, the Term Loan Adequate Protection Parties are granted the following adequate protection (the "Term Loan Adequate Protection Obligations"):

(i)    Term Loan Adequate Protection Lien.  Term Agent, on behalf of the Term Loan Adequate Protection Parties, shall be granted for their benefit, effective and perfected as of the date of entry of this Interim Order and without the necessity of the execution or filing of mortgages, security agreements, pledge agreements, financing statements or other agreements, (A) valid, binding, enforceable and perfected replacement liens upon and security interests in all Term Collateral and (B) a security interest in and lien on all assets of the Debtors (the liens described in the immediately preceding clause (A) and this clause (B), collectively, the "Term Loan Adequate Protection Liens"), which security interest and liens described in this clause (B) shall be subject and subordinate only to (i) the Carve-Out, (ii) Permitted Liens and Claims, (iii) the liens of DIP Agent and DIP Lenders securing all Post-Petition Obligations arising under or in connection with the DIP Credit Agreement and the other DIP Loan Documents and/or this Interim Order in and upon the Collateral and (iv) the Pre-Petition Revolving Loan Adequate Protection Liens; provided that the Term Loan Adequate Protection Liens shall only encumber the Avoidance Action Proceeds upon entry of the Final Order.

(ii)    Term Loan Adequate Protection Super-Priority Claim.  The Term Agent, on behalf of the Term Loan Adequate Protection Parties, shall be granted, subject to the payment of the Carve-Out, a super-priority administrative expense claim junior and subordinate only to the DIP Loan Superpriority Claim and the Pre-Petition Revolving Loan Adequate Protection Superpriority Claim; provided that the Term Agent and the Term Lenders shall not receive or retain any payments, property or other amounts in respect of such super-priority

claims unless and until all Post-Petition Obligations under the DIP Credit Agreement and the other DIP Loan Documents and the Pre-Petition Revolving Loan Obligations (other than unmatured indemnity obligations for which claims have not been asserted) have indefeasibly been paid in cash in full in accordance with the terms of the DIP Credit Agreement and the Pre-Petition Revolving Loan Documents.

(iii)    <u>Term Loan Fees and Expenses</u>.  The Debtors are authorized to make payments to the Term Agent for the Term Agent's and Term Lenders' professional fees and expenses, including the fees and expenses of the Term Agent's and the Term Lenders' counsel and financial advisor, provided that such fees and expenses shall be limited to those of one legal counsel, one local counsel and one financial advisor.  Further, Debtors are directed to deliver, simultaneously with the corresponding deliveries made to the DIP Agent, to Term Agent (a) all Budgets and other reporting required under the DIP Loan Documents and (b) all reporting as required under, and all notices delivered by the Debtors or the DIP Agent pursuant to, the Term Loan Agreements.

(iv)    <u>Payments under the Term Agreement</u>.  The Debtors are authorized to timely make any payments of principal and interest due under the Term Agreements in accordance with the Budget.

(v)    <u>Sale of Term Collateral</u>.  In the event the Debtors sell any of the Term Collateral, the Debtors shall deposit the proceeds of such sale (which shall constitute the cash collateral of the Term Agent for the benefit of the Term Lenders) into a deposit account that is under the control of the Term Agent and shall enter into a deposit account control agreement with the Term Agent and the applicable depositary bank to establish such control; provided that the Incremental Term, Loan Lenders shall retain a junior interest in the proceeds of the sale of

34

any Incremental Term Collateral in accordance with the terms of the Term Loan Documents and the Incremental Term Loan Documents. Any use by the Debtors of such proceeds shall be subject to the prior written consent of the Term Agent.

(f)        Incremental Term Loan Adequate Protection. Incremental Term Loan Agent, for the benefit of itself and the Incremental Term Loan Lenders (collectively, the Incremental Term Loan Adequate Protection Parties"), shall be granted the protection set forth in this Section 2.5(f), pursuant to sections 361, 507 and 363(e) of the Bankruptcy Code for the consent to the use of its collateral, consent to the transactions contemplated by the DIP Loan Documents, and for the diminution in the value of the pre-petition security interests of such party, whether or not such diminution in value results from the sale, lease or use by the Debtors of the Incremental Term Collateral, the stay of enforcement of any pre-petition security interest arising from section 362 of the Bankruptcy Code, or otherwise (each, a "Incremental Term Loan Diminution Claim"). As security for and solely to the extent of any Incremental Term Loan Diminution Claim, the Incremental Term Loan Adequate Protection Parties are granted the following adequate protection (the "Incremental Term Loan Adequate Protection Obligations"):

(i)        Incremental Term Loan Adequate Protection Lien. Incremental Term Loan Agent, on behalf of the Incremental Term Loan Adequate Protection Parties, shall be granted for their benefit, effective and perfected as of the date of entry of this Interim Order and without the necessity of the execution or filing of mortgages, security agreements, pledge agreements, financing statements or other agreements, (A) valid, binding, enforceable and perfected replacement liens upon and security interests in all Incremental Term Collateral and (B) a security interest in and lien on all other assets of the Debtors (the liens described in the immediately preceding clause (A) and this clause (B), collectively, the "Incremental Term Loan

Adequate Protection Liens"), which security interest and liens described in this clause (B) shall be, subject and subordinate only to (i) the Carve-Out, (ii) Permitted Liens and Claims, (iii) the liens of DIP Agent and DIP Lenders securing all Post-Petition Obligations arising under or in connection with the DIP Credit Agreement, the other DIP Loan Documents and this Interim Order in and upon the Collateral, (iv) the Pre-Petition Revolving Loan Adequate Protection Liens, and (v) the Term Loan Adequate Protection Liens; provided that the Incremental Term Loan Adequate Protection Liens shall only encumber the Avoidance Action Proceeds upon entry of the Final Order.

(ii)     Incremental Term Loan Adequate Protection Super-Priority Claim. Incremental Term Loan Agent, on behalf of the Incremental Term Loan Adequate Protection Parties, shall be granted, subject to the payment of the Carve-Out, a super-priority administrative expense claim junior and subordinate only to the DIP Loan Superpriority Claim, Revolving Loan Adequate Protection Superpriority Claim and the Term Loan Superpriority Claim; provided that the Incremental Term Loan Agent and the Incremental Term Loan Lenders shall not receive or retain any payments, property or other amounts in respect of such super-priority claims unless and until all Post-Petition Obligations under the DIP Credit Agreement, Pre-Petition Revolving Loan Obligations and the Term Obligations have indefeasibly been paid in cash in full.

(iii)    Incremental Term Loan Fees and Expenses.  The Debtors are authorized to make payments to the Incremental Term Loan Agent for the Incremental Term Loan Agent's and Incremental Term Loan Lenders' professional fees, including the fees and expenses of the Incremental Term Loan Lenders' counsel and financial advisor, provided that such fees and expenses shall be limited to those of one legal counsel, one local counsel and one financial advisor. Further, Debtors are directed to deliver to Incremental Term Loan Agent,

simultaneously with corresponding deliveries made to the DIP Agent, (a) all Budgets and other reporting required under the DIP Loan Documents and (b) all reporting as required under, and all notices delivered by the Debtors or the DIP Agent pursuant to, the Incremental Term Loan Agreements.

(iv)     <u>Payments under the Incremental Term Loan Agreement</u>.   The Debtors are authorized to timely make any payments of principal and interest due under the Incremental Term Loan Agreement in accordance with the Budget.

(v)     <u>Sale of Incremental Term Collateral</u>.  In the event the Debtors sell any of the Incremental Term Collateral, the Debtors shall deposit the proceeds of such sale (which shall constitute the cash collateral of the Term Agent for the benefit of the Term Lenders and of the Incremental Term Agent for the benefit of the Incremental Term Lenders in accordance with the priorities set forth in the Term Loan Documents and the Incremental Term Loan Documents) into a deposit account that is under the control of the Term Agent and shall enter into a deposit account control agreement with the Term Agent and the applicable depositary bank to establish such control; provided that if the obligations owing under the Term Loan Agreement have been paid in full, in the event the Debtors sell any of the Incremental Term Collateral, the Debtors shall deposit the proceeds of such sale (which shall constitute the cash collateral of the Incremental Term Loan Agent for the benefit of the Incremental Term Loan Lenders) into a deposit account that is under the control of the Incremental Term Loan Agent and shall enter into a deposit account control agreement with the Incremental Term Loan Agent and the applicable depositary bank to establish such control.  Any use by the Debtors of such proceeds shall be subject to the prior written consent of the Term Agent, and if the obligations

owing under the Term Loan Agreement have been paid in full, to the prior written consent of the Incremental Term Loan Agent.

Section 3.    Default; Rights and Remedies; Relief from Stay.

3.1    Events of Default.  The occurrence of any of the following events shall constitute an "Event of Default" under this Interim Order: (a) any Debtor's failure to perform, in any respect, any of the terms, conditions or covenants or their obligations under this Interim Order; or (b) an "Event of Default" under the DIP Credit Agreement or any of the other DIP Loan Documents.

3.2    Rights and Remedies upon Event of Default.  Upon the occurrence of and during the continuance of an Event of Default, (a) the Debtors shall be bound by all restrictions, prohibitions and other terms as provided in this Interim Order, the DIP Credit Agreement and the other DIP Loan Documents, and (b) the DIP Agent shall be entitled to take any act or exercise any right or remedy (subject to Section 3.4 below) as provided in this Interim Order or any DIP Loan Document, as applicable, including, without limitation, declaring all Post-Petition Obligations immediately due and payable, accelerating the Post-Petition Obligations, ceasing to extend Loans or provide or arrange for Letters of Credit on behalf of Debtor Loan Parties, setting off any Post-Petition Obligations with Collateral or proceeds in DIP Agent's possession, and enforcing any and all rights with respect to the Collateral.  DIP Agent and DIP Lenders shall have no obligation to lend or advance any additional funds to or on behalf of Debtor Loan Parties, or provide any other financial accommodations to Debtor Loan Parties, immediately upon or after the occurrence of an Event of Default or upon the occurrence of any act, event, or condition that, with the giving of notice or the passage of time, or both, would constitute an Event of Default.

3.3     Expiration of DIP Revolving Loan Commitment.  Upon the expiration of Debtor Borrowers' authority to borrow and obtain other credit accommodations from DIP Agent and DIP Lenders pursuant to the terms of this Interim Order and the DIP Loan Documents (except if such authority shall be extended with the prior written consent of DIP Agent, which consent shall not be implied or construed from any action, inaction or acquiescence by DIP Agent or any DIP Loan Lender), unless an Event of Default set forth in Section 3.1 above occurs sooner and the automatic stay has been lifted or modified pursuant to Section 3.4 of this Interim Order, all of the Post-Petition Obligations shall immediately become due and payable and DIP Agent and DIP Lenders shall be automatically and completely relieved from the effect of any stay under section 362 of the Bankruptcy Code, any other restriction on the enforcement of its liens upon and security interests in the Collateral or any other rights granted to DIP Agent and DIP Lenders pursuant to the terms and conditions of the DIP Loan Documents or this Interim Order, and DIP Agent, acting on behalf of itself and the other DIP Lenders, shall be and is hereby authorized, in its sole discretion, to take any and all actions and remedies provided to it in this Interim Order, the DIP Loan Documents or applicable law which DIP Agent may deem appropriate and to proceed against and realize upon the Collateral or any other property of the Debtors' Estates.

3.4     Relief from Automatic Stay.  The automatic stay provisions of section 362 of the Bankruptcy Code and any other restriction imposed by an order of the Court or applicable law are hereby modified and vacated without further notice, application or order of the Court to the extent necessary to permit DIP Agent and each DIP Lender to perform any act authorized or permitted under or by virtue of this Interim Order or the DIP Loan Documents, as applicable, including, without limitation, (a) to implement the post-petition financing arrangements

4400612.4

authorized by this Interim Order and pursuant to the terms of the DIP Loan Documents, (b) to take any act to create, validate, evidence, attach or perfect any lien, security interest, right or claim in the Collateral, (c) to assess, charge, collect, advance, deduct and receive payments with respect to the Post-Petition Obligations, including, without limitation, all interests, fees, costs and expenses permitted under the DIP Loan Documents and apply such payments to the Post-Petition Obligations pursuant to the DIP Loan Documents and/or this Interim Order, as applicable, and (d) immediately upon the occurrence of an Event of Default, to take any action and exercise all rights and remedies provided to it by this Interim Order, the DIP Loan Documents or applicable law other than those rights and remedies against the Collateral as provided in the following sentence.  In addition, and without limiting the foregoing, upon the occurrence and during the continuance of an Event of Default and after providing five (5) business days (the "Default Notice Period") prior written notice (the "Enforcement Notice") to counsel for the Debtors, counsel for the Committee (if appointed), and the U.S. Trustee, the DIP Agent, acting on behalf of itself and the DIP Lenders, shall be entitled to take any action and exercise all rights and remedies provided to it by this Interim Order, the DIP Loan Documents or applicable law that DIP Agent may deem appropriate in its sole discretion to proceed against and realize upon the Collateral or any other assets or properties of Debtors' Estates upon which the DIP Agent, for the benefit of itself and the applicable DIP Lenders, has been or may hereafter be granted liens or security interests to obtain the full and indefeasible repayment of all Post-Petition Obligations. Notwithstanding anything to the contrary, any action taken by the DIP Agent to (i) terminate the commitments under the DIP Loan Documents, (ii) accelerate the Loans, (iii) send blocking notices or activation notices pursuant to the terms of any Control Agreement, (iv) repay any amounts owing in respect of the Post-Petition Obligations (including,

4400612.4

without limitation but subject to the terms of this Interim Order, fees, indemnities and expense reimbursements) and (v) cash collateralize Letters of Credit, Bank Products issued pursuant to the DIP Loan Documents and/or Carve-Out obligations, in each case, shall not require any advance notice to the Debtor Loan Parties.  Unless otherwise ordered by the Court, in any hearing regarding any exercise of rights or remedies (which hearing must take place within the Default Notice Period), the only issue that may be raised by the Debtors in opposition thereto shall be whether, in fact, an Event of Default has occurred and is continuing, and the Debtors shall not be entitled to seek relief, including, without limitation, under section 105 of the Bankruptcy Code, to the extent such relief would in any way impair or restrict the rights and remedies of the DIP Agent or the DIP Lenders set forth in this Interim Order or the DIP Loan Documents.

Section 4.    <u>Representations; Covenants; and Waivers.</u>

    4.1   <u>Objections to Pre-Petition Obligations.</u>

    (a)   <u>Objections to Pre-Petition Obligations.</u>  Notwithstanding anything to the contrary in the Interim Order, any action, claim, defense, complaint, motion or other written opposition (hereinafter, an "<u>Objection</u>") that seeks to object to, challenge, contest or otherwise invalidate or reduce, whether by setoff, recoupment, counterclaim, deduction, disgorgement or claim of any kind: (a) the existence, validity or amount of the Pre-Petition Revolving Loan Obligations, or (b) the extent, legality, validity, perfection or enforceability of Pre-Petition Revolving Loan Agent's and Pre-Petition Revolving Loan Lenders' pre-petition liens and security interests in the Pre-Petition Revolving Loan Collateral shall be properly filed with the Court by any Committee, and no other party, within the earliest of (w) sixty (60) calendar days from the date of appointment of the Committee by the U.S. Trustee, (y) in the event no Committee is appointed within the thirty (30) days following the Petition Date, by any

4400612.4

*that if the Court does not confirm a plan at the confirmation hearing currently scheduled as such hearing may be extended, continued or postponed for any reason, the Objection Period shall revert to the time period provided in subsections (w) or (y) above, as applicable, and provided further, however,*

party in interest with requisite standing within seventy-five (75) calendar days from the date of

entry of this Interim Order or (z) the date that is the later of (A) July 8, 2016 at 4:00 p.m. ET or

(B) five (5) Business Days prior to the date that the Court schedules that the confirmation

hearing take place (provided that such 5 Business Day period shall be extended in the event that

the confirmation hearing is extended, continued or postponed for any reason, but in no event

later than the time period provided in subsections (w) or (y) above) with respect to Debtors' Joint

Pre-Packaged Plan of Reorganization (collectively, the "Objection Period"); provided, however,

that nothing herein shall permit any party to challenge the extent or validity of the Post-Petition

Obligations or any liens that secure such obligations.  If any such Objection is timely and

properly filed and successfully pursued, nothing in this Interim Order shall prevent the Court

from granting appropriate relief with respect to the Pre-Petition Revolving Loan Obligations or

Pre-Petition Revolving Agent's or Pre-Petition Revolving Lenders' pre-petition liens on the Pre-

Petition Revolving Loan Collateral.  If no Objection is timely and properly filed, or if an

Objection is timely and properly filed but denied, (i) the Pre-Petition Revolving Loan

Obligations shall be deemed allowed in full, shall not be subject to any setoff, recoupment,

counterclaim, deduction or claim of any kind, and shall not be subject to any further objection or

challenge by any party at any time, and Pre-Petition Revolving Agent's and Pre-Petition

Revolving Loan Lenders' pre-petition liens on and security interest in the Pre-Petition Revolving

Loan Collateral shall be deemed legal, valid, perfected, enforceable, and non-avoidable for all

purposes and of first and senior priority, subject to only the Permitted Liens and Claims, and (ii)

the Pre-Petition Revolving Loan Agent and the Pre-Petition Revolving Loan Lenders and each of

their respective participants, agents, officers, directors, employees, attorneys, professionals,

successors, and assigns shall be deemed released and discharged from any and all claims and

causes of action related to or arising out of the Pre-Petition Revolving Loan Documents and shall not be subject to any further objection or challenge by any party at any time. Nothing contained in this Section 4.1 or otherwise shall or shall be deemed or construed to impair, prejudice or waive any rights, claims or protections afforded to DIP Agent or any DIP Lenders in connection with all post-petition Loans, Letters of Credit, Bank Products and any other post-petition financial and credit accommodations provided by DIP Agent and the DIP Lenders to Debtor Loan Parties in reliance on section 364(e) of the Bankruptcy Code and in accordance with the terms and provisions of this Interim Order and the DIP Loan Documents.

(b)    Objections to Term Obligations. Notwithstanding anything to the contrary in the Interim Order, any action, claim, defense, complaint, motion or other written opposition (hereinafter, a "Term Loan Objection") that seeks to object to, challenge, contest or otherwise invalidate or reduce, whether by setoff, recoupment, counterclaim, deduction, disgorgement or claim of any kind: (a) the existence, validity or amount of the Term Loan Obligations, (b) the extent, legality, validity, perfection or enforceability of Term Agent's and Term Lenders' pre-petition liens and security interests in the Term Loan Collateral, shall be properly filed with the Court within the Objection Period. The Term Agent and any Term Lender shall be entitled to respond to any Term Loan Objection. If any such Term Loan Objection is timely and properly filed and successfully pursued, nothing in this Interim Order shall prevent the Court from granting appropriate relief with respect to the Term Obligations or Term Agent's or Term Lenders' pre-petition liens on the Term Collateral. If no Term Loan Objection is timely and properly filed, or if a Term Loan Objection is timely and properly filed but denied, (i) the Term Obligations shall be deemed allowed in full, shall not be subject to any setoff, recoupment, counterclaim, deduction or claim of any kind, and shall not be subject to any

43

further objection or challenge by any party at any time, and Collateral shall be deemed legal, valid, perfected, enforceable, and non-avoidable for all purposes, and (ii) the Term Agent's or Term Lenders' and each of their respective participants, agents, officers, directors, employees, attorneys, professionals, successors, and assigns shall be deemed released and discharged from any and all claims and causes of action related to or arising out of the Term Loan Documents and shall not be subject to any further objection or challenge by any party at any time.

(c)     Objections to Incremental Term Loan Obligations. Notwithstanding anything to the contrary in the Interim Order, any action, claim, defense complaint, motion or other written opposition (hereinafter, an "Incremental Term Loan Objection") that seeks to object to, challenge, contest or otherwise invalidate or reduce, whether by setoff, recoupment, counterclaim, deduction, disgorgement or claim of any kind: (a) the existence, validity or amount of the Incremental Term Loan Obligations, (b) the extent, legality, validity, perfection or enforceability of Incremental Term Loan Agent's and Incremental Term Loan Lenders' pre-petition liens and security interests in the Incremental Term Collateral shall be properly filed with the Court within the Objection Period.  The Incremental Term Loan Agent and any Incremental Term Loan Lender shall be entitled to respond to any Incremental Term Loan Objection.  If any such Incremental Term Loan Objection is timely and properly filed and successfully pursued, nothing in this Interim Order shall prevent the Court from granting appropriate relief with respect to the Incremental Term Loan Obligations or Incremental Term Loan Agent's or Incremental Term Loan Lenders' pre-petition liens on the Incremental Term Collateral.  If no Incremental Term Loan Objection is timely and properly filed, or if an Incremental Term Loan Objection is timely and properly filed but denied, (i) the Incremental Term Loan Obligations shall be deemed allowed in full, shall not be subject to any setoff,

recoupment, counterclaim, deduction or claim of any kind, and shall not be subject to any further objection or challenge by any party at any time, and Incremental Term Loan Agent's or Incremental Term Loan Lenders' pre-petition liens on and security interest in the Incremental Term Collateral shall be deemed legal, valid, perfected, enforceable, and non-avoidable for all purposes, and (ii) the Incremental Term Loan Agent's or Incremental Term Loan Lenders' and each of their respective participants, agents, officers, directors, employees, attorneys, professionals, successors, and assigns shall be deemed released and discharged from any and all claims and causes of action related to or arising out of the Incremental Term Loan Documents and shall not be subject to any further objection or challenge by any party at any time.

(d)    For the avoidance of doubt, any trustee appointed or elected in these Chapter 11 Cases shall, until the expiration of the Objection Period, and thereafter for the duration of any adversary proceeding or contested matter commenced pursuant to this paragraph (whether commenced by such trustee or commenced by any other party in interest on behalf of the Debtors' estates), be deemed to be a party other than the Debtors and shall not, for purposes of such adversary proceeding or contested matter, be bound by the acknowledgments, admissions, confirmations and stipulations of the Debtors in this Interim Order

4.2    Debtors' Waivers.  Unless otherwise ordered by the Court, at all times during the Cases, and whether or not an Event of Default has occurred, the Debtors waive any right that they may have to seek further authority (a) to use Cash Collateral of DIP Agent and DIP Lenders or of Pre-Petition Revolving Agent and Pre-Petition Revolving Lenders under section 363 of the Bankruptcy Code, (b) to obtain post-petition loans or other financial accommodations pursuant to section 364(c) or 364(d) of the Bankruptcy Code, other than as provided in this Interim Order or as may be otherwise expressly permitted pursuant to the DIP

Loan Documents, (c) to challenge the application of any payments authorized by this Interim Order as pursuant to section 506(b) of the Bankruptcy Code, or to assert that the value of the Pre-Petition Revolving Loan Collateral is less than the Pre-Petition Revolving Loan Obligations, or that the value of the Term Collateral is less than the Term Obligations, or that the value of the Incremental Term Collateral is less than the Incremental Term Loan Obligations, (d) to propose, support or have a plan of reorganization or liquidation that does not provide for the indefeasible payment in cash in full and satisfaction of all Post-Petition Obligations on the effective date of such plan in accordance with the terms and conditions set forth in the DIP Credit Agreement, or (e) to seek relief under the Bankruptcy Code, including without limitation, under section 105 of the Bankruptcy Code, to the extent any such relief would in any way restrict or impair the rights and remedies of DIP Agent or any DIP Lender as provided in this Interim Order and the DIP Loan Documents or DIP Agent's or any DIP Loan Lender's exercise of such rights or remedies; provided, however, that DIP Agent may otherwise consent in writing, but no such consent shall be implied from any other action, inaction, or acquiescence by DIP Agent or any DIP Loan Lender, and the consent of DIP Agent shall be required in order to relieve the Debtors' of their obligations under this Section 4.2.

4.3     Section 506(c) Claims.  Subject to entry of a Final Order granting such relief, no costs or expenses of administration which have or may be incurred in the Cases shall be charged against DIP Agent, any DIP Loan Lender, Term Agent, any Term Lender, Incremental Term Loan Agent, or any Incremental Term Loan Lender, their respective claims or the Collateral, Term Collateral, or the Incremental Term Collateral (as applicable) pursuant to § 506(c) of the Bankruptcy Code without the prior written consent of DIP Agent, Term Agent, or Incremental Term Loan Agent (as applicable), and no such consent shall be implied from any

46

other action, inaction or acquiescence by DIP Agent, any DIP Lender, Term Agent, any Term Lender, the Incremental Term Loan Agent, or any Incremental Term Loan Lender.

4.4    Collateral Rights.  Unless otherwise ordered by the Court, until all Post-Petition Obligations shall have been indefeasibly paid and satisfied in full:

(a)    no other party shall foreclose or otherwise seek to enforce any junior lien or claim in Collateral; and

(b)    upon and after the declaration of the occurrence of an Event of Default, and subject to DIP Agent obtaining relief from the automatic stay as provided for herein, in connection with a liquidation of any of the Collateral, DIP Agent (or any of its employees, agents, consultants, contractors or other professionals) shall have the right, at the sole cost and expense of Debtors, to: (i) enter upon, occupy and use any real or personal property, fixtures, equipment, leasehold interests or warehouse arrangements owned or leased by Debtors and (ii) use any and all trademarks, trade names, copyrights, licenses, patents or any other similar assets of Debtors, which are owned by or subject to a lien of any third party and which are used by Debtors in their businesses.  DIP Agent and DIP Lenders will be responsible for the payment of any applicable fees, rentals, royalties or other amounts due such lessor, licensor or owner of such property for the period of time that DIP Agent actually uses such assets or property (but in no event for any accrued and unpaid fees, rentals or other amounts due for any period prior to the date that DIP Agent actually occupies or uses such assets or properties or for any fees, rentals or other amounts that may become due following the end of DIP Agent's occupation or use).

4.5    Releases.

(a)    Upon the earlier of (a) the entry of a Final Order granting the Motion or (b) the entry of an order extending the Interim Financing Period beyond thirty (30) calendar days after the date of this Interim Order, and in each instance, subject to Section 4.1 above, in consideration of DIP Agent, DIP Lenders, Pre-Petition Revolving Loan Agent and Pre-Petition Revolving Loan Lenders permitting Debtors to use the Pre-Petition Revolving Loan Collateral (including Cash Collateral) and providing other credit and financial accommodations to the Debtors pursuant to the provisions of the DIP Loan Documents and this Interim Order, each Debtor, on behalf of itself and its successors and assigns, (collectively, the "Releasors"), shall, forever release, discharge and acquit DIP Agent, each DIP Lender, Pre-Petition Revolving Agent and each Pre-Petition Revolving Lender and their respective successors and assigns, and their present and former shareholders, affiliates, subsidiaries, divisions, predecessors, directors, officers, attorneys, employees and other representatives (collectively, the "Pre-Petition Releasees") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, of every kind, nature and description, including, without limitation, any so-called "lender liability" claims or defenses, that Releasors had, have or hereafter can or may have against Pre-Petition Releasees as of the date hereof, in respect of events that occurred on or prior to the date hereof with respect to the Debtors, the Pre-Petition Revolving Loan Obligations, the Pre-Petition Revolving Loan Documents and any Loans, Letters of Credit, Bank Products or other financial accommodations made by DIP Agent and/or the DIP Lenders to Debtors pursuant to the DIP Loan Documents.  In addition, subject to the entry of the Final Order, upon the repayment of all Post-Petition Obligations (as defined in the DIP Credit Agreement) owed to the DIP Agent and the DIP Lenders by Debtors and

4400612.4

termination of the rights and obligations arising under the DIP Loan Documents (which payment and termination shall be on terms and conditions acceptable to the DIP Agent), the DIP Agent and the DIP Lenders shall be released from any and all obligations, liabilities, actions, duties, responsibilities and causes of action arising or occurring in connection with or related to the DIP Loan Documents, this Interim Order or the Final Order (including, without limitation, any obligation or responsibility (whether direct or indirect, absolute or contingent, due or not due, primary or secondary, liquidated or unliquidated) to pay or otherwise fund the Carve-Out, on terms and conditions acceptable to DIP Agent.

Section 5.     Other Rights and Post-Petition Obligations.

    5.1     No Modification or Stay of This Interim Order.  The DIP Agent and DIP Lenders are entitled to all of the rights and benefits granted under Section 364(e) of the Bankruptcy Code to the maximum extent permitted by law, notwithstanding (a) any stay, modification, amendment, supplement, vacation, revocation or reversal of this Interim Order, the DIP Loan Documents or any term hereunder or thereunder, (b) the failure to obtain a Final Order pursuant to Bankruptcy Rule 4001(c)(2), or (c) the dismissal or conversion of one or more of the Cases (each, a "Subject Event").

    5.2     Power to Waive Rights; Duties to Third Parties.  DIP Agent shall have the right to waive any of the terms, rights and remedies provided or acknowledged in this Interim Order in respect of DIP Agent and DIP Lenders (the "DIP Lender Rights"), and shall have no obligation or duty to any other party with respect to the exercise or enforcement, or failure to exercise or enforce, any DIP Lender Right(s).  Any waiver by DIP Agent of any DIP Lender Rights shall not be or constitute a continuing waiver.  Any delay in or failure to exercise or enforce any DIP Lender Right shall neither constitute a waiver of such DIP Lender Right, subject DIP Agent or any DIP Lender to any liability to any other party, nor cause or enable any other

4400612.4

party to rely upon or in any way seek to assert as a defense to any obligation owed by the Debtors to DIP Agent or any DIP Lender.

   5.3 <u>Reservation of Rights</u>. The terms, conditions and provisions of this Interim Order are in addition to and without prejudice to the rights of DIP Agent and each DIP Lender to pursue any and all rights and remedies under the Bankruptcy Code, the DIP Loan Documents or any other applicable agreement or law, including, without limitation, rights to seek adequate protection and/or additional or different adequate protection, to seek relief from the automatic stay, to seek an injunction, to oppose any request for use of cash collateral or granting of any interest in the Collateral, as applicable, or priority in favor of any other party, to object to any sale of assets, and to object to applications for allowance and/or payment of compensation of Professionals or other parties seeking compensation or reimbursement from the Estates; provided that, if the exercise of any such right or remedy is inconsistent with the terms of this Interim Order, any such exercise shall be subject to further order of the Court.

   5.4 <u>Binding Effect</u>.

   (a) The provisions of this Interim Order and the DIP Loan Documents, the Post-Petition Obligations, the DIP Loan Superpriority Claim, the Pre-Petition Revolving Loan Adequate Protection Superpriority Claim, and any and all rights, remedies, privileges and benefits in favor of each of the DIP Agent and the DIP Lenders, the Term Loan Adequate Protection Obligations and any and all rights, remedies, privileges and benefits in favor of each of the Term Agent and the Term Lenders, and the Incremental Term Loan Adequate Protection Obligations and any and all rights, remedies, privileges and benefits in favor of each of the Incremental Term Loan Agent and the Incremental Term Loan Lenders provided or acknowledged in this Interim Order, and any actions taken pursuant thereto, shall be effective

4400612.4

immediately upon entry of this Interim Order pursuant to Bankruptcy Rules 6004(g) and 7062, shall continue in full force and effect, and shall survive entry of any such other order, including without limitation, any order which may be entered confirming any plan of reorganization, converting one or more of the Cases to any other chapter under the Bankruptcy Code, or dismissing one or more of the Cases.

(b)    Any order dismissing one or more of the Cases under section 1112 or otherwise shall be deemed to provide (in accordance with §§ 105 and 349 of the Bankruptcy Code) that (i) the DIP Loan Superpriority Claim and DIP Agent's and DIP Lenders' liens on and security interests in the Collateral and all other claims, liens, adequate protections and other rights granted pursuant to the terms of this Interim Order shall continue in full force and effect notwithstanding such dismissal until the Post-Petition Obligations are indefeasibly paid and satisfied in full, (ii) the Term Loan Adequate Protection Obligations and other rights granted to the Term Agent and Term Lenders pursuant to the terms of this Interim Order shall continue in full force and effect notwithstanding such dismissal until the Term Obligations are indefeasibly paid and satisfied in full, (iii) the Incremental Term Loan Adequate Protection Obligations and other rights granted to the Incremental Term Loan Agent and the Incremental Term Loan Lenders pursuant to the terms of this Interim Order shall continue in full force and effect notwithstanding such dismissal until the Incremental Term Loan Obligations are indefeasibly paid and satisfied in full, and (iv) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing all such claims, liens, protections and rights.

(c)    In the event this Court modifies any of the provisions of this Interim Order or the DIP Loan Documents following a Final Hearing, such modifications shall not affect the rights or priorities of DIP Agent and DIP Lenders pursuant to this Interim Order

with respect to the Collateral or any portion of the Post-Petition Obligations which arises or is incurred or is advanced prior to such modifications, and this Interim Order shall otherwise remain in full force and effect.

(d)     This Interim Order shall be binding upon Debtors, all parties in interest in the Cases and their respective successors and assigns, including any trustee or other fiduciary appointed in the Cases or any subsequently converted bankruptcy case(s) of any Debtor.  This Interim Order shall also inure to the benefit of DIP Agent, DIP Lenders, Debtors, the Term Agent, the Term Lenders, the Incremental Term Loan Agent, the Incremental Term Loan Lenders and their respective successors and assigns.

5.5     Restrictions on Cash Collateral Use, Additional Financing, Plan Treatment.

(a)     All post-petition advances and other financial accommodations under the DIP Credit Agreement and the other DIP Loan Documents are made in reliance on this Interim Order and, it shall constitute an Event of Default under the terms of this Interim Order and the DIP Loan Documents if (i) the Debtors seek entry of an order, (ii) any other party seeks and the Debtors consent, fail to object or fail to otherwise oppose entry of an order, or (iii) an order is entered in the Cases (upon entry of a Final Order, there shall not at any time be any order entered in the Cases), or in any subsequently converted case under chapter 7 of the Bankruptcy Code, which (a) authorizes the use of cash collateral of Debtors in which DIP Agent or DIP Lenders have an interest, or the sale, lease, or other disposition of property of any Debtor's Estate in which DIP Agent or DIP Lenders have a lien or security interest, except as expressly permitted hereunder or in the DIP Loan Documents, or (b) authorizes under section 364 of the Bankruptcy Code the obtaining of credit or the incurring of indebtedness secured by a lien or

security interest which is equal or senior to a lien or security interest in property in which DIP Agent or DIP Lenders hold a lien or security interest, or which is entitled to priority administrative claim status which is equal or superior to that granted to DIP Agent and DIP Lenders herein; unless, in each instance (x) DIP Agent shall have given its express prior written consent with respect thereto, no such consent being implied from any other action, inaction or acquiescence by DIP Agent or any DIP Lender, or (y) such other order requires that all Post-Petition Obligations shall first be indefeasibly paid and satisfied in full in accordance with the terms of the DIP Credit Agreement and the other DIP Loan Documents, including, without limitation, all debts and obligations of Debtors to DIP Agent and DIP Lenders, which arise or result from the obligations, loans, security interests and liens authorized herein, on terms and conditions acceptable to DIP Agent.  The security interests and liens granted to or for the benefit of DIP Agent and DIP Lenders hereunder and the rights of DIP Agent and DIP Lenders pursuant to this Interim Order and the DIP Loan Documents with respect to the Post-Petition Obligations and the Collateral are cumulative and shall not be altered, modified, extended, impaired, or affected by any plan of reorganization or liquidation of Debtors and, if DIP Agent shall expressly consent in writing that the Post-Petition Obligations shall not be repaid in full upon confirmation thereof, shall continue after confirmation and consummation of any such plan.

  5.6 <u>No Owner/Operator Liability</u>.

   (a) Subject to the entry of the Final Order granting such relief, neither the DIP Agent nor any DIP Lender shall be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the

4400612.4

United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq., as amended, or any similar federal or state statute).

5.7     Marshalling.  Subject to entry of the Final Order granting such relief, (a) in no event shall DIP Agent or any DIP Lender be subject to the equitable doctrine of "marshalling" or any similar doctrine with respect to the Collateral, and (b) DIP Agent and DIP Lender shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to DIP Agent or any DIP Lender with respect to proceeds, products, offspring or profits of any of the Collateral, as applicable.

5.8     Right of Setoff.

(a)     To the extent any funds were on deposit with Pre-Petition Revolving Agent as of the Petition Date, including, without limitation, all funds deposited in, or credited to, an account of any Debtor with Pre-Petition Revolving Agent or any Pre-Petition Revolving Lender immediately prior to the filing of the Cases (regardless of whether, as of the Petition Date, such funds had been collected or made available for withdrawal by any such Debtor), such funds (the "Deposited Funds") are subject to rights of setoff.  By virtue of such setoff rights, the Deposited Funds are subject to a lien in favor of DIP Agent or the applicable DIP Lenders pursuant to §§ 506(a) and 553 of the Bankruptcy Code.

5.9     Right to Credit Bid.

(a)     The DIP Agent, on behalf of itself and the DIP Lenders, shall have the right to "credit bid" on the Collateral.  In connection with any such credit bid, including without limitation, sales of the Debtors' assets occurring pursuant to section 363 of the Bankruptcy Code or included as part of any restructuring plan subject to confirmation under

section 1129(b)(2)(A)(ii)-(iii) of the Bankruptcy Code, the DIP Agent, on behalf of itself and the DIP Lenders, shall have the right to credit bid the amount of its and their claims arising under the terms of the DIP Loan Documents, or on account of the Pre-Petition Revolving Loan Adequate Protection Liens.

(b)     Subject to the entry of a Final Order, the Term Agent, on behalf of itself and the Term Lenders, shall have the right to "credit bid" the amount of its and their claims arising under the terms of the Term Agreements or on account of the Term Loan Adequate Protection Liens, during any sale of the Term Collateral or of all or substantially all of the Debtors' assets, including without limitation, sales occurring pursuant to section 363 of the Bankruptcy Code or included as part of any restructuring plan subject to confirmation under section 1129(b)(2)(A)(ii)-(iii) of the Bankruptcy Code, provided that, in connection with any such credit bid with respect to the sale of Collateral, the Term Agent pays all Post-Petition Obligations in cash indefeasibly in full accordance with the terms of the DIP Credit Agreement and the other DIP Loan Documents.

(c)     Subject to the entry of a Final Order, the Incremental Term Loan Agent, on behalf of itself and the Incremental Term Loan Lenders, shall have the right to "credit bid" the amount of its and their claims arising under the terms of the Incremental Term Loan Agreement or on account of the Incremental Term Loan Adequate Protection Liens, during any sale of the Incremental Term Collateral or of all or substantially all of the Debtors' assets, including without limitation, sales occurring pursuant to section 363 of the Bankruptcy Code or included as part of any restructuring plan subject to confirmation under section 1129(b)(2)(A)(ii)-(iii) of the Bankruptcy Code, provided that, in connection with any such credit bid with respect to the sale of Collateral, the Incremental Term Loan Agent pays all

Post-Petition Obligations in cash indefeasibly in full accordance with the terms of the DIP Credit Agreement and the other DIP Loan Documents; provided further that in connection with any such credit bid with respect to the Term Collateral, the Incremental Term Loan Agent pays all outstanding obligations under the Term Loan Documents in cash upon the closing of any such sale.

5.10    Term; Termination.

(a)    Notwithstanding any provision of this Interim Order to the contrary, the term of the financing arrangements among Debtors, DIP Agent and DIP Lenders authorized by this Interim Order may be terminated pursuant to the terms of the DIP Credit Agreement.

5.11    Limited Effect.   In the event of a conflict between the terms and provisions of any of the DIP Loan Documents and this Interim Order, the terms and provisions of this Interim Order shall govern.

5.12    Objections Overruled.   All objections to the entry of this Interim Order are, to the extent not withdrawn, hereby overruled.

Section 6.    Final Hearing and Response Dates.

The Final Hearing on the Motion pursuant to Bankruptcy Rule 4001(c)(2) is scheduled for June 28, 2016, at 2:00 pm ET before this Court.  The Debtors shall promptly mail copies of this Interim Order to the Noticed Parties, and to any other party that has filed a request for notices with this Court and to any Committee after same has been appointed, or such Committee's counsel, if same shall have filed a request for notice.  Any party in interest objecting to the relief sought at the Final Hearing shall serve and file written objections, which objections shall be served upon (a) proposed counsel to the Debtors: Baker Botts LLP, 30 Rockefeller Plaza, New York, NY 10112, Attn: Emanuel C. Grillo; (b) proposed co-counsel to

the Debtors: Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, 16th Flr., P.O.

Box 1347, Wilmington, DE 19899-1347, Attn: Robert J. Dehney; (c) counsel for the DIP Agent,

Otterbourg, P.C., 230 Park Avenue, New York, New York 10169-0075; Attn: Andrew M.

Kramer, Esq.; (d) co-counsel for the DIP Agent, Womble Carlyle Sandridge & Rice, LLP, 222

Delaware Avenue, Suite 1501, Wilmington, Delaware 19801, Attn: Thomas Horan; (e) counsel

for the Term Agent and Consenting Term Lenders, Jones Day, 250 Vesey Street, New York, NY

10281-1047, Attn: Scott J. Greenberg and Michael J. Cohen, (f) counsel to the Incremental Term

Loan Agent, Latham & Watkins, 885 Third Avenue, New York, NY 10022-4834, Attn: Mark A.

Broude, and 355 South Grand Avenue, Los Angeles, CA 90071-1560, Attn: Adam E. Malatesta;

(g) counsel to any Committee; and (h) the U.S. Trustee; and shall be filed with the Clerk of the

United States Bankruptcy Court for the District of Delaware, in each case, to allow actual receipt

of the foregoing no later than 4:00 p.m., prevailing Eastern time on June 21, 2016.

Dated: _June 8_, 2016
   Wilmington, Delaware

_____
THE HONORABLE LAURIE SELBER SILVERSTEIN
UNITED STATES BANKRUPTCY JUDGE

4400612.4